IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:22-cr-00165-MSN |
| ) | Hon. Michael S. Nachmanoff |
| HATCHET M. SPEED, ) | |
| *Defendant.* ) | |

## MOTION FOR A NEW TRIAL

Comes now Defendant Hatchet M. Speed, by counsel Brooke S. Rupert, Assistant Federal Public Defender, and Courtney Dixon, Assistant Federal Public Defender and moves this Court to order a new trial pursuant to Federal Rule of Criminal Procedure 33. A new trial is appropriate because of the Court's prejudicial exclusion of critical defense evidence relevant to Mr. Speed's knowledge and intent.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On September 6, 2022, a grand jury in the Eastern District of Virginia issued an indictment charging Mr. Speed with three counts of knowing possession of a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. *See* Indictment at 1-3 (ECF No. 1), Sept. 6, 2022. Specifically, each count of the indictment charges:

> On or about June 22, 2022, in Alexandria, Virginia, within the Eastern District of Virginia, the defendant, HATCHET M. SPEED, knowingly possessed a firearm, to wit: a silencer (as defined in section 921 of Title 18 of the United States Code), not registered to him in the National Firearms Registration and Transfer Record.

*Id.* The charges were based upon the allegations that Mr. Speed purchased three solvent traps from a website called Hawk Innovative Tech in [March] 2021. Upon

receiving his purchases from Hawk Innovative Tech, Mr. Speed kept them in a storage unit along with other weapons and silencers he previously purchased and registered in accordance with relevant federal regulations. Following an investigation of Mr. Speed, the government received a warrant to search the storage unit and found the three solvent traps there, in their original packaging and without any modifications. The government alleged the characteristics of these solvent traps qualify them as "silencers" as defined in 18 U.S.C. § 921. Because Mr. Speed had not yet registered them with the National Firearms Registration and Transfer Record, as is required of all silencers, the government brought charges pursuant to 26 U.S.C. §§ 5841, 5861(d), and 5871.

From December 12 through December 16, 2022, the Court conducted a jury trial in this matter. After a presentation from the government, which included witness testimony from Mr. Speed's coworker, detailed charts of Mr. Speed's lawful firearm purchases, and numerous inflammatory references to January 6, the government was unable to convince a jury of Mr. Speed's guilt unanimously beyond a reasonable doubt.

After failing to prove its case, the government informed the Court that it would seek to retry Mr. Speed. The case was scheduled to begin on January 17, 2023. However, on December 23, nearly a month before the second trial began, the government received a lengthy email from one anonymous juror explaining his or her thoughts on the mistrial, and what the government could have done differently to

secure a guilty verdict.[1] (Att. 1 "Letter") This thorough account of the innerworkings of the jury's process included thoughts and opinions on each witness, on which line of argument was most effective, and on how the government could adjust its case against Mr. Speed. *Id.* Specifically, the anonymous juror communicated the following:

- "It would be really helpful to have at least one, but preferably a few, silencers to show the jurors to demonstrate the similarity to the solvent traps in question." Letter at 1.

- "[I]t would be useful to be able to see a patch trap to compare to these solvent traps." Letter at 1.

- "A tripping point for the jurors was figuring out the definition of a silencer . . . . The instructions on the definition of a silencer given by the judge are really hard to parse." Letter at 1.

- "[I]t would be helpful to spend more time explaining why this solvent trap doesn't work well as a gun cleaning device." Letter at 2.

- "[I]t would be helpful to talk more about the idea of recycling gun cleaning fluid and highlight how ridiculous the idea would be." Letter at 2.

- "[I]t would be really helpful if the prosecutors put up the patents during the trial and talked about the parts of a silencer and showed it juxtaposed with the [HIT Devices]. Letter at 2.

- "[January 6] is probably not a major part of the case." Letter at 2.

- "No one found the testimony of Mr. Ngo to add value to the case." Letter at 2.

Additionally, the letter began: "I appreciate your giving me your email address when I called to talk about my experience being on the Hatchet Speed jury," making

---

[1] Although the government is aware of the individual juror's identity, it redacted his or her name when eventually disclosing that juror's communications. Because the identity remains anonymous to the defense, the letter will be referred to as the "anonymous juror letter."

3

clear that this letter was not the first communication between this juror and the government, and that the government provided the anonymous juror with an email address so that he or she could continue to discuss the case. Letter at 1.

Although the government received this letter in December 2022, it did not share the letter's contents or even alert the defense of its existence until Friday evening on January 6, 2023, mere hours after the agreed-upon motions deadline. In its communication with the defense, (Att. 2 – Traxler Email), the government revealed that it had, at some unspecified time, advised the Court *ex parte* of the communication, and that the Court "informed us that it was appropriate to share this communication with you." Traxler Email at 1.

The Court also heard argument on the defense's motion to reconsider the previous evidentiary ruling regarding Mr. Speed's knowledge as to whether the HIT Devices met the definition of "silencer" under Section 921 of Title 18. The defense had argued in its motion that recent Supreme Court and Fourth Circuit caselaw underscored that for classification-based offenses, the government must prove that the defendant knew that the classification definition was met--in this case, specifically, that Mr. Speed knew the HIT Devices constituted "silencers" as defined under Section 921 of Title 18. The Court denied the defense's motion, explaining that all the government needed to prove was that Mr. Speed understood the device to have features or characteristics of a silencer, not that it met the statutory definition.

Before the conclusion of the motions hearing, the Court briefly addressed the December 23, 2022 juror letter. The Court stated that it instructed the government

to share the letter and cautioned against taking any inference "that there was any improper effort to delay turning that information over." The Court did not disclose (1) when the government brought the letter to the Court's attention; (2) when the Court instructed the government to disclose the letter to the defense; or (3) the other communications the government had with this juror.

From January 17 through January 18, 2023, the court conducted a second jury trial in this matter. The government substantially modified its case from the first trial, presenting new exhibits, highlighting and omitting different details, and altering its list of witnesses. Specifically, the government introduced plastic patch traps and silencer patents, just as the anonymous juror had suggested. The government also did not call Mr. Ngo (who testified for the government in the first trial). And after staunchly advocating for the inclusion of January 6th related evidence in the first trial, the government did not discuss it at all after learning from the anonymous juror that it was "probably not a major part of the case." Finally, the government spent much of its direct examination of its expert highlighting the difficulty of recycling gun cleaning fluid in the HIT Devices and explaining how the HIT Devices do not work well as a gun cleaning device.

## STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *see also United States v. Mitchell*, 602 F.2d 636, 639 (4th Cir. 1979) ("In circumstances [in which the defendant files a motion for new trial under Rule 33], the

5

interest of justice is the touchstone for consideration."); 3 Wright & Miller, Federal Prac. & Proc. Crim. § 589 (4th Ed.) ("any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial."); *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (same). "[T]he meaning of the phrase in 'the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp.2d 637, 642 (E.D. Va. 2006) (Ellis, J.); *see also United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) ("By its terms, Rule 33 confers broad discretion on a district court.").[2]

Rule 33 is available to correct not only convictions based on insufficient evidence, but also convictions affected by other legal errors. *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) ("[I]t is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred."). The question in such cases is whether the errors reasonably could have affected the jury's verdict. *See, e.g., United States v. Ibisevic*, 675 F.3d 342, 350 (4th Cir. 2012) (in evaluating non-constitutional error, question is not "whether absent the error, 'sufficient evidence existed to convict,' but rather whether 'we believe it 'highly probable that the error did not affect the judgment'"); *United States v. Mason*,

---

[2] Under Rule 33, the trial court's discretion is not limited by the plain and harmless error standards that govern on appeal. *Jennings*, 438 F. Supp.2d at 641 n.10.

993 F.2d 406 (4th Cir. 1993) (new trial required where court could not conclude that improper examination "had no reasonable likelihood of contributing to" conviction); *United States v. Belyea*, 159 F. App'x 525, 531 (4th Cir. 2005) (unpublished) (exclusion of evidence at trial was not harmless where "[w]e simply lack the requisite assurance that any error did not substantially sway the jury's judgment").[3]

The likelihood that a trial error may have affected the outcome of a trial is evaluated under a multi-factor test, including the strength of the evidence and any communications from the jury signaling a deadlock or significant questions about the evidence. *See Tuggle v. Netherland*, 79 F.3d 1386, 1393 (4th Cir. 1996) (harmlessness of trial error is evaluated under a six-factor test, including "any indications that the jury was hesitant or entertained doubt in reaching its . . . determination"); *United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981) (reversing for failure to give requested jury instruction, and finding that jury's request for "clarification of the law applicable to the case" indicated the harmfulness of the error); *United States v. Ince*, 21 F.3d 576, 585 (4th Cir. 1994) (error not harmless where the evidence of guilt was "fairly strong, but not overwhelming," because the trial record as a whole was not "so

---

[3] The Rule 33 standard applicable to claims of insufficient evidence–which permits relief only where "the evidence weighs heavily against the verdict," *see United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)–is inapplicable to Rule 33 motions based on other types of error. *See United States v. Munoz*, 605 F.3d 359, 373 n.9 (6th Cir. 2010) (distinguishing Rule 33 standard applied to weight-of-the-evidence claims from other new trial grounds, and criticizing district judge for conflating standards). In such cases, a new trial is warranted in the event of any error sufficient to warrant reversal on appeal. *See* 3 Wright & Miller, Federal Prac. & Proc. Crim. § 589; *Wall,* 389 F.3d at 474.

conclusive"–independent of the evidence affected by the error–to establish a high probability that the error did not affect the judgment); *accord Kotteakos v. United States*, 328 U.S. 750, 764 (1946) (the focus must be on the "impact of the thing done wrong on the minds" of the jurors, rather than on whether the jury could reasonably have reached the same verdict had the error not occurred).

## ARGUMENT

### The Court Should Grant a New Trial Because it Erred in Rejecting Evidence Concerning Mr. Speed's Lack of Knowledge that the Devices at Issue Qualified as Silencers

"A new trial can be granted if the admission or rejection of evidence was erroneous." *Galaxy Comput. Servs. v. Baker*, No. 1:04cv1036 (JCC), 2005 U.S. Dist. LEXIS 33704, at *8 (E.D. Va. Sep. 2, 2005) (citing 11 C. Wright, A. Miller, M. Kane, Federal Practice & Procedure: Civil 2d, § 2805, pp. 54-55 (1995)). In this case, key evidence that Mr. Speed did not know he possessed "silencers" as defined by federal law was excluded at trial that should have been admitted.

Specifically, just as 18 U.S.C. § 922(g) requires knowledge of a "relevant fact—that is, [] status as a felon," *United States v. Heyward*, 42 F.4th 460, 467 (4th Cir. 2022), 26 U.S.C. § 5861(d) requires knowledge of a relevant fact, that "a silencer was in fact a silencer." *Rogers v. United States*, 522 U.S. 252, 258 (1998). In this case, the Court erred in prohibiting Mr. Speed from introducing evidence that he did not *know* he possessed devices that "belonged to the relevant category" at issue. In *United States v. Heyward*, the Fourth Circuit vacated a defendant's 18 U.S.C. § 922(g) conviction based in part on a hearing transcript in which the defendant was asked

8

whether he was "legally allowed to have a gun," and he responded "that he had 'owned a gun before in [his] name . . .' and that he was '*not a felon right now*, so [he could] get one.'" *Heyward*, 42 F.4th at 468 (emphasis in orig.). The court relied on this statement not to establish that the defendant did not understand the legal consequences of his previous conviction, but rather to support the defendant's claim that he did not know a fact – his status as a felon – that resulted in legal consequences.

Just as the court in *Heyward* relied upon the defendant's prior statements that he was "*not a felon right now*, so [he could] get [a firearm]," 42 F. 4th at 468, the Court should have permitted Mr. Speed to introduce his prior statement that "if you drill [into the solvent trap] and you don't submit the Form One, then now you're a felon." Such statements are admissible because, under Federal Rule of Evidence 401, they tend to make it more probable that the defendant did not know of a relevant fact – here, knowing possession of a "silencer" as defined by federal law – because of the defendant's mistaken belief that the devices he possessed did not constitute "silencers." Just as the defendant in *Heyward* would be permitted to introduce evidence of his mistaken belief that he was not a "felon," Mr. Speed should have been permitted to introduce evidence of his belief that the devices he possessed were not "silencers."

The Court erred in classifying such evidence as a "mistake of law" defense. Mistake of law is defined as a lack of knowledge of the *legal consequences* that arise from *acknowledged conduct*. As the court explained in *Heyward*, "Moody's *Rehaif*

9

claim failed because he asserted a classic (and classically flawed) mistake-of-law defense, insisting that the government should have been required to prove not only that he understood the nature of his previous conviction but *also* that he knew his conviction had made it illegal for him to possess a firearm." 42 F. 4th at 466 (emphasis in orig.). The government is not required to prove knowledge of the legal consequences arising from acknowledged status as a felon, or knowledge of the legal consequences arising from the knowing possession of silencers. But the government also cannot simply reframe the defendant's argument that he lacked knowledge as to the classification of the items he possessed into a dispute about the law. Just as the Heyward majority rejected the dissent's argument that the defendant was actually confused about the legal definition of a felony which included state misdemeanors with maximums of two years or more, Mr. Speed's belief that the items he possessed were not "silencers" unless a hole was drilled into the end should not be mischaracterized as confusion about federal law.

    Mr. Speed did not seek to present a defense that he did not know of the legal requirement to register silencers, or the legal prohibition on the possession of unregistered silencers. Those are legal consequences arising from the possession of devices that qualify as "silencers" under federal law. Instead, he sought to present the defense that he "had not known of the relevant fact—that is, [the devices he possessed qualified as 'silencers']—that made it unlawful for him to possess [them without registering them]." *Cf. Heyward*, 42 F. 4th at 467. Pursuant to *Heyward*, the Court's rejection of such evidence was erroneous.

## **CONCLUSION**

Given the significance of the error that occurred in this case, its centrality to the trial, and the difficulties faced by the jury in arriving at a unanimous verdict in the first trial, Mr. Speed respectfully requests that this Court vacate his conviction and grant him a new trial.

Respectfully submitted on March 6, 2023.

**HATCHET SPEED**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia


by: /s/ *Courtney Dixon*
Courtney Dixon
*Pro hac vice*
DC Bar No. 1766415
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
courtney_dixon@fd.org

Brooke Rupert
VA Bar No. 79729
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
brooke_rupert@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March 2023, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas W. Traxler
Amanda Lowe

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

> /s/ *Courtney S. Dixon*
> Courtney S. Dixon
> Assistant Federal Public Defender